THE SOUTHERN KANSAS RAILWAY COMPANY V. DAVID A. GORSUCH.

VERDICT—*Inconsistent Findings—New Trial.* The record in this case examined, and *held,* that the special findings of the jury are so inconsistent with each other and with the general verdict, and disclose such a want of intelligence and fairness, that the motion for a new trial should have been sustained by the trial court.

*Error from Coffey District Court.*

ACTION to recover damages for personal injuries. Judgment.for plaintiff, *Gorsuch,* at the January term, 1889. The defendant *Railway Company* brings the case here. The opinion states the facts.

*Geo. R. Peck, A. A. Hurd,* and *J. G. Egan,* for plaintiff in error.

*E. B. Peyton, Redmond & Junkins,* and *C. F. Arthur,* for defendant in error.

Opinion by STRANG, C.: Action for damages in two counts, begun in the district court of Coffey county, May 2, 1888. In his first count the plaintiff below alleges that on the 1st day of September, 1887, he accompanied some stock which he shipped at Waverly, in Coffey county, for Kansas City, over the road of the plaintiff company, riding in the caboose of the freight train on a stock contract; that the train to which the caboose in which he was riding was attached was side-tracked at a station called "Gardner," and while standing on the said side-track another train ran in on the side-track behind the one on which he was riding, and struck the rear of the caboose in which he was riding so violently that it threw him from the seat upon which he was lying to the floor of the car, whereby he was greatly bruised, wounded, and hurt, to his damage in the sum of $1,500. For his second cause of action the plaintiff below alleged, that on the 15th day of September, 1887, he again accompanied some stock shipped from Waverly

to Kansas City over the company's road, riding as before in the caboose attached to the stock train; that when they reached Argentine, during the night, they were required to get out of the caboose and get on top of the stock cars and ride into Kansas City; that while making said change and before he had got off of the caboose, and without giving him time to get off, and while on the steps of the caboose in the act of getting off, without any warning, the switch engine, in the act of coupling on to the caboose to run it back to a side-track, ran violently against the said caboose, throwing him off onto the ground, injuring his hands, arms, side, and back, and also injuring him internally, putting him to $300 expense for doctors and medicine, and to his damage otherwise in the sum of $4,000. The defendant company answered to each of said counts, first, a general denial; and, secondly, alleged that if the plaintiff was injured such injuries were the result of his own negligence. Plaintiff replied by a general denial. The case was tried January 24, 1889, by the court and a jury, resulting in a general verdict for the plaintiff in the sum of $1,800. The jury also made special findings of fact. Motion for a new trial was argued and overruled. A case was made for this court, and brought here asking this court to review and reverse the judgment of the trial court, and send the case back for new trial.

Numerous errors are alleged in the petition of plaintiff in error, but only one or two are seriously argued. We will consider only the motion for a new trial, and, in connection with this, only the character of the general verdict and the findings of fact upon which it is based. The general verdict is for $1,800. The findings show that $50 of that amount was for inconvenience and suffering, resulting from the injury claimed to have been inflicted September 1st, as set out in the first count in the petition. Under the second count of the petition the sum of $400 was allowed for permanent injury, resulting from the injury inflicted on the 15th of September, at Argentine. Four hundred and seventy-five dollars were allowed the plaintiff for future pain and suffering in connec-

tion with the same injury, and $750 for loss of future ability to labor.   The jury also allowed $125 for medical expenses and treatment.   The jury seem to have absolutely ignored the evidence in relation to the plaintiff's inability to labor from the date of his injury to the time of the trial, as they fail to give him anything for this, the real period of disability, as disclosed by the evidence.   Nor do they accord him anything for pain and suffering during this time, the period during which he must have suffered most, and during which the uncontradicted evidence shows that he did suffer.   An examination of this case shows that the jury, either through ignorance or design, decided this case with little regard to the evidence or rights of either party under the evidence.   In cases where juries, whether designedly or as the result of ignorance, ignore the evidence or trifle with the rights of parties, trial courts should promptly set aside their verdicts, and thus remind them that they are sworn to try causes according to the law and the evidence, and not to render verdicts and make findings to suit their whims or desires.   It is evident that the jury in this case did not intend to be fair, or else that they were too ignorant to understand and appreciate the evidence as produced and the law as given.

The following questions, and the answers to the same, fully illustrate the character of the jury that tried the case, and the manner of their treatment of the same:

Q. 28.   "Is not the plaintiff at this time in a sound and healthy condition?"   To this question the jury first answered: "The preponderance of the evidence in the case would indicate that he is."   After they were sent back to answer questions that they had left unanswered, and to return more specific answers to some of the questions already answered, they returned with a new answer to this question 28, the answer this time being "No."   This was a flat contradiction of their first answer, the jury being still bound to observe the preponderance of the evidence.   The final answer to this question being against the preponderance of the evidence thereon as found by

the jury themselves, the trial court should have set aside the verdict and granted a new trial.

Q. 29. "Is not the plaintiff's complexion fresh and ruddy at the present time?" The first answer of the jury to this question was, "Moderately so," while in their second answer they say, "No."

Q. 31. "Is there any indication at the present time of any fracture of the plaintiff's ribs?" Answer: "Not from the evidence of the examining physicians." Their second answer to this question was, "No."

Q. 39. "On the morning of September 15, 1887, at Argentine, did not C. M. Stout, in alighting from the caboose, step upon his sound leg, and fall over to avoid an injury to his leg which had been broken theretofore?" The first answer to this question was, "No conclusive evidence that he did." The second answer was, "Yes."

Q. 55. "If you find in favor of plaintiff on the second count in his petition, say how much you will allow for future pain and suffering, if anything." To this the first answer was, "No evidence introduced to determine this point." In their second answer they say, "$475."

Q. 57. "If you find in favor of the plaintiff in the second count of his petition, how much do you allow him for medical expenses and treatment?" The first answer to this question was as follows: "No evidence to determine an answer, but allowed in question 54." The second answer to this question was, "$125." The amount thus found above $50 was unsupported by any evidence. This was so clearly an arbitrary finding of the jury, that counsel for plaintiff below offer, in their brief in this court, to remit $75 of the amount.

Q. 30. "Is not the plaintiff unusually well preserved, strong and vigorous for a man of his age?" To this question the jury gave the following evasive answer: "Not unusually so." And yet with such an answer to this question the jury allowed the plaintiff below $400 for permanent injury; $475 for future pain and suffering, and $750 for future loss of

ability to labor; or $1,625 damages based upon a condition of health that the worst they can say of it is, that the individual referred to is not unusually well-preserved, strong and vigorous for a man of his age. This will not do. Trial courts must hold juries to a better observance of their duties, or it will become necessary for this court to reverse their judgments and send the cases back for new trials.

There are many other glaring inconsistencies in the record before us, but we have quoted enough to show their character, and the want of intelligent consideration given the case by the jury that tried it. We think the court should have granted a new trial.

We recommend that the case be reversed, and remanded for a new trial.

By the Court: It is so ordered.

All the Justices concurring.