THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY,

v. FORD L. MARKS.

(Filed July 6, 1901.)

1. **CIVIL PROCEDURE—Redundant or Irrelevant Matter.** The Code of Civil Procedure, section 3997, provides: If redundant or irrelevant matters be inserted in any pleading, it may be stricken out on motion of the party prejudiced thereby; but as a general rule the refusal of the court to strike out a part of a pleading, or any surplusage or immaterial averments, is harmless error, unless it can be seen that the matter which the court refused to strike out of the pleading, materially affected the interests of the other party,

2. **INSTRUCTIONS—Error to Refuse, When.** The refusal of the court to give an instruction which properly states the law, is not reversible error if practically the same proposition of law is stated by the court to the jury in other instructions given, and if the charge of the court to the jury, as a whole, clearly states the law.

(Syllabus by the Court.)

*Error from the District Court of Logan County; before Jno. H. Burford, Trial Judge.*

*Asp* and *Cottingham,* for plaintiff in error.

*Cotteral & Hornor,* for defendant in error.

STATEMENT OF FACTS.

The defendant in error, Ford L. Marks, on the 29th day of January, 1898, while riding in a buggy, on a public highway, running near to the right of way and tracks of the plaintiff in error, near the town of Mulhall, said buggy being drawn by one horse, said horse became frightened at the blowing of a whistle, on an engine owned and operated by the plaintiff in error, the blowing of said whistle being what is known as the sounding of a stock alarm. Said buggy was

overturned and the plaintiff was injured by having his right leg fractured and broken thereby, and was otherwise injured and bruised. The case was tried in the district court by a jury, and after being instructed as to the law by the court, and after hearing the evidence and arguments of counsel, the jury returned a verdict in favor of the plaintiff, and against the defendant for the sum of three thousand dollars. Motion for a new trial having been made and overruled, the court pronounced judgment upon the verdict, to which action of the court the defendant excepted, and brings the cause here for review.

Opinion of the court by

IRWIN, J.: The first claim of plaintiff in error for a reversal of this case was the order of the court overruling defendant's motion to strike out a portion of plaintiff's petition. That portion asked to be stricken out is as follows:

"That on such occasion it was the plaintiff's purpose if he discovered the approach of any train, to continue his journey eastward on the said east and west road and highway, and thereby remove from the vicinity of the said railroad and approaching train; that the defendant by its servants in charge of said locomotive engine propelling said freight train, in total disregard of duty, without due or ordinary care, and carelessly, negligently and wantonly, failed wholly to ring the bell or blow the whistle, on the said engine or to give any other alarm, or warning of the approach of said freight train, eighty rods, or at any time before reaching said crossing; that if such signal, either blowing the whistle, or ringing the bell on said train, had been given by the defendants or its servants, or if such due and proper warning of the approach of said train had been given on said occasion as it was then and there the duty of the defendant so to do, in the exercise of due and proper care, the plaintiff could and

would have thereupon proceeded eastward, and on the said east and west road or highway, and could or would have thereby or otherwise avoided proximity to said freight train, and escaped the injury and damages herein set forth, all of which were due to the fault and negligence of the defendant, and without fault or negligence on the part of the plaintiff. That after passing over said track at said crossing, the plaintiff diligently endeavoring to discover the approach of any train, and fully believing no train was approaching the crossing, rightfully and lawfully turned and started southward, along said north and south road or highway, parallel with said railroad track, and right of way, as he was induced to do by the failure of the defendant, to give him due or any warning of the approach of said train."

We are unable to agree with contention of counsel for plaintiff in error, that this refusal to strike out is reversable error. The proof in this case shows that the place of plaintiff's injury was close to the right of way of the defendant company, and for that reason would be to some extent a dangerous place for travel at a time when said defendant company were using said right of way for the running of trains and engines along its tracks, and would be a place where horses would be likely to be frightened by the sounding of steam from the engine, and the necessary ringing of bells and blowing of whistles, and it would be to a certain extent negligence on the part of the plaintiff, to undertake to travel along said highway at a time when engines or trains were passing along said track. Now it is not only the duty of the plaintiff to be free from contributory negligence, but it seems to us he would have the right to make the statement in his petition that he was free from any negligence in traveling along that particular highway at that particular time. It might have been sufficient in this case to have alleged in general terms that

the plaintiff was using and exercising usual care and caution in traveling on and along said highway, and that he was rightfully on said highway, without going into detail as to his reasons for traveling this particular highway at this particular time, but we are unable to see how the statement contained in that particular portion of the petition which plaintiff in error complains of, could have in any way injured the plaintiff in error or affected the verdict of the jury, or how the overruling of the motion to strike out could have in any way affected the substantial rights of the plaintiff in error.

It is contended that the statute which requires the railway company to sound alarm when approaching highway crossings, is meant for the benefit of persons who are crossing railroad tracks and is in no way intended for the benefit of those who have safely crossed the track, removed from the vicinity of the crossing, and have turned up a parallel roadway, which at no point crosses the track. While as a statement of a proposition of law this may be correct, as applied to the facts in this case it seems to us that these signals were intended for the benefit of persons situated as the plaintiff in this case was at the time of crossing this track. He says that if the signals had been given so that he could have known of the near approach of the train, he would not have turned into the parallel road, running close to the track, but would have continued on east and thus avoided the danger. Now whether he was just approaching the track at the time, or had crossed over and was going from the railroad crossing, is a matter which it seems to us makes no difference in this case, because if the signals had been given and he had heard the same, he could then have protected himself and driven east along this east and west road as he was at no great distance from the railroad crossing at the time that these signals should have been given; and for

the purpose of determining whether his act in turning into that parallel road, running in close proximity to the railroad track of the plaintiff in error, was such negligence as would prevent his recovery, it was necessary for the jury to hear the evidence as to whether these warnings and signals were given by the plaintiff in error or its servants in approaching this crossing. As a matter of law although the plaintiff in error and its servants may have entirely omitted to blow the whistle, ring the bell or sound any alarm, at the approach of this crossing, this would not relieve the plaintiff from the duty of looking to see the approach of a train and listening to hear the same, nor would it justify him in entering upon a place of danger such as a railroad crossing, or a road running close to and parallel with the railroad track, if by the use of his sense of sight or hearing, he could have discovered such approaching train, and avoided such danger. And this proposition of law was fairly and clearly presented to the jury by instruction No. 7 and also No. 8, No. 9, No. 11, No. 12, and No. 13; and in No. 14 the court still further emphasises this doctrine by the following instruction.

"If you find from the evidence that the plaintiff could have seen or heard the train from a point where common care and prudence required him to look and listen, and he turned upon the south highway when he could have known that a train was approaching, had he exercised proper care and prudence, then your verdict must be for the defendant."

And in No. 15 which reads as follows:

"Even though you should believe from the evidence that the defendant's employes in charge of the locomotive and train in question in this case, failed or omitted to give any signals or warning to travelers about to pass over the cross-

ing, or along the highway in question, as said locomotive and train approached said crossing, such failure or omission on the part of the defendant would not excuse the plaintiff from looking and listening for approaching trains, or cars before he attempted to pass over the said crossing or along said railway track where his horse might become frightened; and if he could by looking have seen or by listening have heard the approach of said train in time to have avoided being injured notwithstanding such failure or omission on the part of the defendant, he was guilty of such contributory negligence as will prevent a recovery, and your verdict must be for the defendant."

The court instructs the jury that if the plaintiff could by looking have seen, or by listening have heard, the approach of said train, in time to have avoided being injured, notwithstanding such failure or omission to sound the whistle or ring the bell, or give the alarm on the part of the defendant company, the plaintiff was guilty of such contributory negligence as would prevent recovery, and in such case directed the jury to find for the defendant.

Now it seems to us in the light of these clear and explicit instructions, that the allegations contained in the petition, and the proof and the evidence introduced at the trial as to the sounding of the alarm, or failure to sound the alarm, could not have been prejudicial to the interest of the defendant. Nowhere in these instructions does the court tell the jury that they may find for the plaintiff simply on account of the omission of the signals, if he was east of the track when the signals should have been given, and on account of the omission took the parallel road and sustained the injury. Instruction No. 6, which fixes the basis for the plaintiff's recovery, charged the jury that if the plaintiff used ordinary

care and took the south road on account of the omission of signals, and that in addition the alleged whistling took place, the plaintiff might recover; but in the next instruction the court instructs the jury that while the law requires the signals, nevertheless the plaintiff cannot recover if he could by the exercise of reasonable care and caution have ascertained the train's approach, and thus avoided the danger. And to make it still more emphatic, in instruction No. 10 the court instructs the jury that the signals are for those only having a right to rely upon them, when such person is not negligent, and the court repeats that the signals being omitted, plaintiff cannot recover if he could have avoided the accident. Instruction No. 16 instructs the jury that the signals are not necessary if the traveler, being in a safe position, sees the train before he reaches a place of danger and if he then attempts to cross the track, or goes into a place of danger the omission of the signals is not negligence, and that if you find from the evidence that the plaintiff while he was on the west side of defendant's track, and in a safe position, could have seen or heard the defendant's train approaching, or if he crossed said track and before he turned into the highway running south, he could by the exercise of ordinary care and caution, have seen or heard the defendant's approaching train, and he failed to exercise such care and caution, and entered upon such highway, and was injured by reason of his horse becoming frightened at said train, or the ordinary and usual signals given by the engineer, then he cannot recover in this action, although the bell was not rung or the whistle blown, before the train reached the highway crossing. In instruction No. 17 the court states the law to be that either the blowing of the whistle or the ringing of the bell satisfied the law, and in No. 18 the court instructs the jury that the omission of the signals must be the

aproximate cause of the accident which resulted in plaintiff's injuries, provided that notwithstanding the failure to ring the bell or blow the whistle the plaintiff could have by looking or listening, at the time he turned into the south road, parallel to the railroad, have seen or heard the approaching train, and avoided the injury, and if he failed to take such precaution, then he could not recover in this case. It was one of the things which it was the province of the jury in this case to determine from all the evidence, facts and circumstances in evidence, whether the conduct of the plaintiff at the time and just prior to the injury, under all the circumstances surrounding him at the time, was careless or otherwise, and whether it was such care and caution as a reasonably prudent person would exercise for his own protection under similar circumstances. The jury had the witnesses on both sides before them. They had photographs showing the situation and surroundings, they visited the scene of the accident, and they were in better position to judge of the facts for these reasons than this court can possibly be on simply examining the written record and for this reason this court will not disturb the findings of fact by the jury where there is evidence which reasonably tends to sustain such findings. By their verdict the jury said that under all the circumstances detailed in evidence the plaintiff was not negligent, and they have also said that the injury sustained by the plaintiff was the result of the negligence of the defendant company.

The second assignment of error insisted upon by the plaintiff in error for a reversal of this case is that the court refused to give an instruction asked by the defendant, to the effect that if the jury should find that the plaintiff could by looking and listening have seen the train approach, as far

away as the whistling post, eighty rods north of the crossing, then the omission of signals would not excuse him from going upon or over the crossing. This error, if error it is, it seems to us, is amply cured by the other instructions given by the court, which clearly covers this point, and it is a well understood rule of law that the refusal to repeat an instruction cannot be assigned as error. On page 323 of the record, appears an instruction to the effect that the failure of the company to give the signal, or warning, cannot justify a traveler in entering a place of danger if by the use of his sense of sight or hearing he can discover such approaching train and avoid such injury. In other words, notwithstanding the omission of the signals, the plaintiff would be negligent and could not recover, if he could have seen or heard the train, and could have avoided the danger, but entered any place of danger, not only the crossing, but all other places of danger as well. This is a broader instruction than defendant asked, and does not limit the necessity of looking and listening for a distance of only eighty rods, but goes further and makes him negligent, if he did not look and listen any and all distances. In instruction No. 13 the court advises the jury that it is the absolute duty of the traveler to use all reasonable perecaution to ascertain the approach of trains, and avoid any injury; that if there is an opportunity at any place on the road he is traveling, it is his duty to look and make investigations, and that he cannot close his eyes and relieve himself of his neglect; and that if there were points at any place where he could have seen or heard the train, by stopping, looking and investigating, then if he failed to do so he cannot recover.

Now it seems to us that such an instruction as this given on the part of the court, to the jury, the defendant in the

court below cannot complain because the court refused to repeat the proposition of law, as stated in the refused instruction, or to make it more emphatic. It seems to us that all that could have been accomplished by giving this instruction asked by the defendant below would have been to repeat the instruction already given.

In 11 Amer. & Eng. Ency. Pl. & Pr. 288, 289, and 290, this proposition of law is laid down, which we think to be sound:

"Instructions on points which have been sufficiently covered by other instructions may properly be refused, although they are correctly drawn and applicable to the evidence. This is so whether the instruction requested is covered by the general charge, or by special instructions granted at the request of either party, or whether the mode of expression is the same or different. Indeed the practice of taking the instructions requested and formulating a general charge to the jury, has been especially commended."

The third proposition urged by the plaintiff in error is that some of the special findings are contrary to the evidence, and inconsistent with each other, indicating that the jury did not fairly and intelligently consider the case. We have examined these special findings, and have carefully examined the record containing the evidence, and while it is true that by separating out isolated portions of the evidence, and quoting them, it may be made to appear that some of these findings were in conflict with the evidence, if taken as a whole, and taking the evidence as a whole, we think there is no great discrepancy, and we are unable to say that the special findings of the jury were inconsistent, not only with the evidence, but inconsistent with their general verdict. Many of these findings of fact it seems to us were not such findings of fact as were

absolutely necessary in the discussion of the case at bar. In other words many of them depend upon evidentiary facts, not material to the main issue in the case. One of the special findings complained of is No. 44, where the jury say that the engineer saw the plaintiff before he was thrown out of his buggy. The contention is made that this finding was directly opposed to all the evidence on the subject. The plaintiff in error cites the case of *S. K. Railway Co. v. Garsuch,* 47 Kan. 585. This Kansas case is no doubt good law, and if the facts in this case were the same as the facts in that case, it might be to a great extent controlling, but we are unable to agree with what the court there says:

"The special findings of the jury were so inconsistent with each other, and with the general verdict, and disclose such a want of intelligence and fairness, that the motion for a new trial should have been sustained."

It seems to us that this comment cannot fairly be made as to the conduct of the jury in the case at bar. We can see no evidence of any great inconsistency, in the special findings of the jury, and the answers thereto, nor do we see any evidence of a want of fairness or lack of intelligence on the part of the jury who tried this case.

Now as to the answer to special interrogatory No. 44 being contrary to all the evidence in the case, simply means that it was contrary to the evidence of the engineer himself. Now it is a well known proposition of law, that where the jury believes that any witness has sworn wilfully false as to any material fact in the case, then they are at liberty to disregard his entire testimony, except in so far as he is corroborated by other credible facts and circumstances in proof in the case. Now

the engineer, who is the only witness as to the subject, absolutely and firmly denied that he sounded the stock alarm at or near the crossing, when all of the proof in the case shows that he did sound such alarm. Now it seems to us that this leaves the jury no escape from the conclusion, either that the other witnesses who have testified as to this fact, have sworn falsely, or that the engineer has sworn falsely to this fact. Now it is in the province of the jury to determine which of these things are true, and if they determine it in favor of the other witnesses, and that the engineer has sworn falsely as to this material fact in this case, they must necessarily have found that he had sworn wilfully false, as to this, and this being true, and there being no corroboration of his statement that he did not see the plaintiff before his injury, then they had the right under the rule of law enunciated herein to disregard his entire testimony; and there is other testimony: There is the testimony of the plaintiff himself, and the lady who was in the buggy with him, that the engineer was looking out towards them from the cab, and that the fireman waved his hand at them, and thereby plainly showing that they saw the plaintiff and his companion before the injury. Therefore we think that the jury were justified in finding as they did in the forty-fourth special finding, that the engineer did see the plaintiff before the injury. The answer to this inquiry has another very important bearing upon this case. That is, if this finding is true, and as we view the law it is the duty of the court to regard it as true, there being evidence which reasonably tends to sustain it, it shows that under the circumstances the blowing of the stock alarm was a wilful and malicious act. There is no evidence of any necessity for the sounding of a stock alarm at this place, and in fact it is conceded in the evidence that there was no necessity for it. And

the conduct of both the enginer and fireman clearly shows that the fireman understood the purpose of the engineer in sounding said alarm, and accordingly waved his hand at the time. And he knew that this purpose was to scare and frighten this horse.

The most charitable view we can take of this matter is that it was a careless and thoughtless act; but we are also constrained to the view that it was an act which under the circumstances was highly reprehensible, and verges very near to the line of criminal carelessness, and one for which the party doing it deserves the severest censure not only of his employers, but of the public.

Another contention of the plaintiff in error is that the verdict for three thousand dollars for the injuries sustained was unreasonable. We think it hardly worth the time to seriously discuss this proposition. We need hardly say that the fracturing of a leg is a serious injury. And under the instructions of the court it was the province of the jury to assess such damages as they fully believed would fully compensate for the injury sustained; and when twelve candid men, after hearing all the evidence in the case, and being correctly instructed as to the law by the court, had given their judgment as to the amount of damages, we do not feel like disturbing the judgment when the damages for a broken leg are not greater than three thousand dollars.

We have carefully examined this entire record, and carefully read over the briefs of both parties, and we think the instructions of the court taken as a whole, are a very able, full and complete statement of the law governing the case, and finding no error in the rulings of the court, at the trial, or the

instructions given to the jury, and finding no inconsistency in the verdict of the jury, when weighed in the light of the evidence, we think the decision of the trial court should be affirmed, which is accordingly done.

Burford, C. J., having presided in the court below, not sitting; all the other Justices concurring.