[Civ. No. 7274.  First Appellate District, Division Two.—March 15, 1930.]

ALEXANDER DENOVAN, Respondent, v. GOLDEN STATE WOOLEN MILLS (a Corporation) et al., Appellants.

Newby & Newby and Dee Holder for Appellants.

Hewlings Mumper and Meserve, Mumper, Hughes & Robertson for Respondent.

STURTEVANT, J.—The plaintiff commenced an action against the defendants to obtain a decree rescinding a contract of purchase of 3,333 shares of the capital stock of the defendant corporation. The defendants answered and a trial was had before the court sitting without a jury. The court made findings in favor of the plaintiff and from a judgment entered thereon the defendants have appealed and have brought up a bill of exceptions.

1. The defendants claim that the material findings on the allegations of fraud were not sustained by the evidence. Among other things the following facts stand out prominently. Prior to the time the plaintiff made his purchase the defendant corporation was a going concern operating a woolen mill near Los Angeles and had been operating the mill for some time. The plaintiff had recently left Australia and had taken up a residence at Riverside. He was the authorized representative of certain firms in Australia to sell wool in this country. He met Mr. C. B. Eyer, president of the defendant corporation. They had talks about the plaintiff selling to the defendant some Australian wools. At first Mr. Eyer stated that the corporation had a full supply. Later he stated that the corporation needed moneys and suggested that if the plaintiff would purchase a block of stock, that then and in that event the corporation would be in a position to consider purchasing wool from the

plaintiff. Furthermore, he stated that the corporation was in the act of floating a bond issue of $300,000 and a block of preferred stock in the sum of $150,000. Mr. Eyer and the plaintiff had many talks on these subjects. Counsel have indulged in much argument as to whether Mr. Eyer represented that he was selling *treasury* stock. However, it is admitted that he stated the purchase moneys were to go into the corporate treasury. In this connection the defendants assert with vigor that the moneys did go into the treasury and, therefore, there was no misrepresentation. The plaintiff replies such act was a mere subterfuge to make it appear on the face of the books that the terms of plaintiff's contract had been complied with. In this connection he shows that the defendants caused a number of entries regarding those moneys to be made in the books of the corporation, but the plaintiff's payments did not stop until the moneys so paid were in the pockets of Mr. Eyer and that the corporation was not a dollar richer after the transaction had been completed. Continuing, the plaintiff argues that thereafter the corporation was in no better position to buy wool from the plaintiff than it was before the plaintiff purchased the stock and that the very object of the plaintiff's purchase was defeated. He shows that he was placed in the position of having purchased shares in a failing concern without even obtaining the benefit of his contributions. In this connection, the defendants frankly state in their brief that the stock which was actually sold to the plaintiff was some of the stock which had been sold to Mr. Eyer and his associates before the plaintiff became a stockholder. While it may be conceded that the evidence is conflicting it is certain that there is an abundance of evidence in the record to sustain the findings made by the trial court on the allegations of fraud.

2. The defendants next assert that it is neither alleged nor proved that the plaintiff suffered any damage by reason of the defendants' purported fraud. The plaintiff makes two replies, either of which is sufficient. Drawing attention to the fact that this is an action in rescission, he asserts that he was not bound to allege nor prove specific damages. (*Munson* v. *Fishburn,* 183 Cal. 206, 216, 217 [190 Pac. 808].) If he proved material injury he was entitled to rescind. That the facts which we have recited, if

true, showed material injury to the plaintiff is patent. In an action for rescission he was not bound to prove the extent of the injury. (12 Cal. Jur. 766.)

3. The defendants claim the plaintiff was guilty of laches; in other words, he should have discovered, and in fact did discover, the facts which he now alleges long prior to the commencement of the action. The stock was purchased September 22, 1922. The plaintiff alleges he did not discover the fraud until May 1, 1925, and that the discovery was made at the time by reason of the report of an expert, who examined the books of the defendant corporation. The notice of rescission was given on May 8, 1925. This action was filed June 28, 1925. The trial court made findings that are very full and complete on these particular subjects. It found that the plaintiff discovered the alleged fraud on April 14, 1925. All other facts were found as stated by the plaintiff. As to what the plaintiff should have discovered the defendants assert that the facts appeared on the face of the books of the corporation, and after the plaintiff became a stockholder he should have examined those books. The claim is not well founded. The transaction was so conducted that it would have taken an expert examination of all the accounts, including the accounts with each individual stockholder, to disclose the facts complained of by the plaintiff. No such duty rested on a prospective purchaser of stock in the corporation.

Turning to the assertion that the plaintiff did make a discovery earlier than as found by the trial court, the defendants quote certain written communications and call our attention to certain declarations of the plaintiff. Thereupon, they assert, that soon after the plaintiff purchased his stock he discovered facts which put him on inquiry. The plaintiff freely concedes the presence in the record of the evidence just adverted to, but contends that no part or portion of that evidence involved fraud or even the purchase of corporate stock. He asserts that all of such evidence was addressed to the fact that the business of the corporation did not prosper and that the plaintiff was dissatisfied with the business management. None of this evidence was addressed to the issue of when the plaintiff made, or by the exercise of ordinary care should have made, a discovery that he had been defrauded. As stated above, the trial court made findings

in favor of the plaintiff. It may be conceded that the evidence was conflicting on the issue under discussion, but we are entirely unable to say that there is not evidence in the record which sustains the findings in favor of the plaintiff on the issue of discovery.

4. The next point made by the defendants is that the plaintiff cannot, under any view of the case, recover for more than the 33 shares sold to him personally. The stock in suit was bought by the plaintiff acting for himself and the several members of his family. It was issued 1500 shares to Mary Denovan, 1500 shares to Marion Denovan, 300 shares to Ronald Denovan, and 33 shares to the plaintiff personally. The notice of rescission was signed by each and every one of them and by their attorney. After the notice of rescission had been given the other members of the family assigned their interests to the plaintiff and he commenced the action. After the notice of rescission had been duly given each holder had a complete cause of action. Such complete cause of action was assignable (Civ. Code, secs. 953, 954; *Wikstrom* v. *Yolo Fliers' Club*, 206 Cal. 461 [274 Pac. 959]), and was duly assigned. Moreover, as this plaintiff was the person with whom, and in whose name, the contract of purchase was made for the benefit of himself and the members of his family, above named, he was entitled to maintain the action and to take all steps in the nature of performing all conditions precedent and then to commence and maintain the action. (*Lauer* v. *Williams*, 32 Cal. App. 590, 594 [163 Pac. 687].)

5. It is claimed by the defendants that the alleged misrepresentation, that all of the stock which had theretofore been issued had been paid for in cash at ninety per cent of the par value thereof, is not actionable fraud. This contention they argue at length. The same and many additional arguments have been made in the past. However, the decisions are against the contention (26 C. J. 1228, n. 6–10; *Munson* v. *Fishburn*, 183 Cal. 206, 212–214 [190 Pac. 808]). No authority to the contrary is cited by defendants.

6. They assert that it was clearly error for the court to adjudge that the defendant corporation is jointly and severally liable with the defendant Eyer for the purported misrepresentation of the latter. There are many answers to the point. The first one is that the point was never called

to the attention of the trial court. The defendants interposed a joint demurrer. It was so framed that if the complaint contained one good count, then it was properly overruled. It did not purport to charge that there was a misjoinder of parties defendant. In arguing this point the defendants assert that under the doctrine of *respondeat superior* the defendant corporation was not liable. If the corporation had interposed a separate demurrer the point could have been placed before the trial court, but the corporation did not do so. Counsel do not cite any part of the record showing that the point under discussion was ever presented to the trial court. However, we think the defendants will not even contend that the corporation was not a proper party, even though it was not a necessary party; furthermore, that they will not contend that a joint and several judgment against a corporation and a natural person is never proper. As appears from what we have said above there is no finding of the trial court that is not sustained by the evidence. The defendants do not point to a fact that is absent in the proof as against either of the defendants. The point is reduced, therefore, to the question, "Was the liability, several or joint and several?" By his complaint the plaintiff charged the corporation and C. B. Eyer jointly. The allegation which he used throughout was that "the defendants" did the acts alleged. There was evidence supporting that allegation in that form, in other words, that they acted together. The evidence showed that the corporation did all things in the manner directed by, and in the interest of, the defendant Eyer and fully participated with him in all transactions. The artificial person and the natural person under such facts were jointly and severally liable. (14a C. J., p. 775, n. 67; 27 C. J., p. 27, n. 43–45; 20 Cal. Jur. 510, sec. 20; 38 Cyc. 488.)

█ 7. The trial court admitted, over the objection of the defendants, evidence of a similar sale to Utters. The defendants concede that such evidence is admissible to prove intent. But they say intent is not material in an action as for rescission, and they cite *Giovannoni* v. *Bartmann*, 59 Cal. App. 651, 657, 658 [211 Pac. 844]. That case does not so hold. It but follows section 1568 of the Civil Code. The case of the plaintiff rested on Civil Code, section 1689, subdivision 1 and section 1572, subdivision 1. It is statutory law that intent is an issue in such a case.

■ 8. The plaintiff was formerly a resident of Australia and came to California a few months before the negotiations arose which gave rise to this action. While on the stand, over the objection of the defendants, he was allowed to state that under the law of Australia when stock is transferred the signature of the transferee must be placed on the old certificate. The plaintiff argues that such fact was admissible on the issue of laches. If it was not, the most that can be said is that it was immaterial. But, if there was material evidence supporting the court's finding on that issue (and we have shown there was), the rights of the defendants were not prejudiced by the admission of some immaterial evidence addressed to that same subject. We find no error in the record.

The judgment is affirmed.

Nourse, Acting P. J., and Burroughs, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 14, 1930, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 12, 1930.