The STATE of Oklahoma on Relation of the COMMISSIONERS OF THE LAND OF-FICE of Said State, Plaintiff In Error,

v.

CITIES SERVICE OIL COMPANY, a Corporation, Defendant in Error.

No. 37350.

Supreme Court of Oklahoma.

Oct. 29, 1957.

R. H. Dunn, A. M. deGraffenried, N. A. Gibson, for plaintiff in error.

Gentry Lee, F. H. Bacon, and R. O. Mason, Bartlesville, Johnson, Tomerlin, Cotter & High, Oklahoma City, for defendant in error.

BLACKBIRD, Justice.

This appeal involves an action to cancel an instrument, commonly called, and referred to, in the oil and gas industry, as a "division order" (alleged to be void) and to recover certain sums of money as the market value of gas produced under an oil and gas lease. The division order constituted the purported authority for defendant in error's purchase and marketing of gas and casinghead gas produced under the lease which was entered into many years ago between plaintiff in error, as lessor, and

a company that was defendant in error's predecessor in title, as lessee. Instead of said lease providing for delivery to the lessor, or payment to it of the proceeds of the sale of, a ⅛th part of all of the gas produced *and saved, or sold,* from the leased premises (as in substance do the more conventional types of oil and gas leases used in Oklahoma and other states comprising what is termed the "Mid-Continent" area) the lease in this case provides as follows:

"2. The lessee hereby agreed to deliver o(r) cause to be delivered to the Commissioners of the Land Office of the State of Oklahoma or their successors, a royalty of one-eighth part of the oil or gas *produced* from the leased premises or in lieu thereof pay to the State the market value of said royalty interest as the Commissioners may elect. *All* oil and gas due to the State under this contract shall be delivered by the lessee herein free of cost, into pipe lines, tanks, or cars, settled or paid for before removing from the premises if handled in any other way.

*\*    \*    \*    \*    \*    \**

"3. The lessee hereby agrees to deliver or cause to be delivered to the Commissioners of the Land Office, of the State, a royalty of one-eighth of *all* casinghead or drip, gas or gasoline, *produced or extracted* from any well on said premises, or in lieu thereof, pay the State the market value of said royalty interest as the Commissioners of the Land Office may elect. \*  \*" (Emphasis ours.)

The division order sought to be cancelled, instead of authorizing defendant to purchase *all* of the oil, gas and casinghead gas *produced* from the leased premises purports to authorize defendant in error to purchase "all *or as much as you may from time to time desire* of the oil and/or gas produced *and saved* from said premises." With reference to the price to be paid for such gas as the defendant in error may choose to buy (under the above provision) the division order provides:

"The gas shall be paid for at the following prices, to-wit, *if not used for the manufacture of gasoline, at the market price for dry gas at the well prevailing in said locality;* if utilized for the manufacture of gasoline, the price as determined by Departmental schedule on the lack hereof based on gasoline content as determined by physical tests and the average monthly selling price per gallon of the product marketed, it being further agreed that, if, when and while the residue remaining of gas purchased hereunder by buyer and used for the manufacture of gasoline, after the extraction of gasoline therefrom and proportionate use thereof for plant operation exceeds, over any quarter annual period calculated from the first day of January of the current year, the amount of gas used on the premises above described in connection with the development and operation thereof for the production of oil and/or gas therefrom, *and such surplus residue is being marketed by buyer* or used by buyer in the development and operation of leases other than the land above described, *buyer will account to royalty owners, in the event said gas is being marketed, for one-eighth of one-half of the gross proceeds received by buyer from the sale thereof (less cost of boosting and transportation in the event either of said operations are involved in the marketing thereof),* or in the event said gas is used by buyer in the development and operation of lands other than the lands above described, *for one-eighth of one-half* of the market value thereof at the tail of buyers gasoline plant." (Emphasis supplied.)

To the Third Amended Petition they filed in said action, plaintiff in error, hereinafter referred to as plaintiff, attached both the division order in question and the lease, as exhibits; and, in its first alleged cause of action, wherein it asserted its alleged right to cancellation of the division order, quoted Tit. 64 O.S.1951 § 281, authorizing the

Commissioners of the Land Office to lease land such as that involved herein for "a royalty of *not less than* one-eighth part of the oil or gas produced \* \* \*" therefrom "\* \* \* or in lieu thereof the payment to the State of the market value of said royalty interest, as the Commissioners may elect." (Emphasis supplied.) It was plaintiff's theory, as indicated in said pleading, that by reason of this statute, the hereinbefore cited division order, insofar as it purported to authorize the purchase by defendant in error (hereinafter referred to as defendant) of less than ⅛th of *all* of the oil, gas and casinghead gas *produced* from the leased premises, and at a price alleged to be less than the market price of that fractional part of such products, was null, void and contrary to law. In paragraph IX of its first alleged cause of action, plaintiff admitted its previous approval, execution and delivery to defendant of the division order in question, but it alleged, among other things, that said acts were beyond the Commissioners' authority and were "ultra vires." In paragraph XV of said alleged cause of action, plaintiff further alleged:

"\* \* \* that the casinghead gas produced from the leasehold estate involved in this action has, at all times mentioned herein, had a market value. That the market value of casinghead is based upon the value of the gasoline, butane, propane and other liquid hydrocarbons therein contained and the value of the "dry" or "residue" gas remaining after the extraction from the casinghead gas of the liquid hydrocarbon content. That under the terms, conditions and covenants of the lease contract, this plaintiff was entitled to receive from the defendants an equal one-eighth part of such casinghead gas, or in lieu thereof, the fair and reasonable market value thereof, as the plaintiff might elect. That plaintiff has never taken any of the oil, gas or casinghead gas produced from said lease in kind, but has at all times elected to take the fair and reasonable

market value of such oil, gas and casinghead gas. That there was no written election to take the fair and reasonable market value of such casinghead gas, other than the gas division order hereinbefore referred to, which plaintiff contends was invalid, null and void."

In its second alleged cause of action—the one by which it sought money judgment—it seems to have been plaintiff's theory that, under the aforedescribed lease, it was entitled to ⅛th of the market value—not just of the casinghead gas produced thereunder—but of the market value of the products that had been extracted, and/or processed therefrom, namely: Liquid carbons and residue gas. On this theory, they alleged the amount of these constituents that had been extracted and processed from the casinghead gas produced on the leased premises, alleged the total market value and/or sale price thereof, alleged the difference between these amounts and the amount of royalty money defendant had paid it, and prayed for recovery of money judgment against defendant in the amount of such difference.

Thereafter, defendant filed a combined motion to strike, motion to make more definite and certain, and general demurrer. The motions were directed to portions of both plaintiff's first and second alleged causes of action. The court combined its rulings on the motion to strike, and general demurrer, in one judgment sustaining the motion in part and overruling it in part, and sustaining defendant's demurrer to both of plaintiff's alleged causes of action. Plaintiff thereupon dismissed, without prejudice, its second alleged cause of action asking for money judgment, but elected to stand on the allegations of its first cause of action; and refused to plead further. Whereupon, the court included in its judgment, a dismissal of the action. From said judgment, plaintiff has lodged the present appeal.

Since, as a result of plaintiff's voluntary dismissal, without prejudice, of its second alleged cause of action, the allegations of

that part of its Third Amended Petition are not in question here, the issues now presented are necessarily confined to the questions of whether the trial court erred in sustaining, in part, defendant's aforesaid motion to strike and in holding, by its ruling on defendant's demurrer, that the facts set forth in that part of plaintiff's said petition, entitled "First Cause Of Action", were insufficient to state a cause of action against defendant.

Most of the argument under plaintiff's first proposition deals with the merits of its first alleged cause of action, as a whole—without regard to the portions thereof ordered stricken by the judgment appealed from herein. In one paragraph of this portion of their brief, however, plaintiff's counsel say:

"Those portions of the amended petition which were stricken by the court contained the reasons establishing why the division order was beyond the scope of the authority of the Commissioners, and consequently its execution was ultra vires and ineffective as between the parties to establish a valid contract which would supplant and modify the original contract."

Then counsel says: "It has long been the rule that pleadings will be liberally construed * * *" and if their allegations "* * * are relevant to the issue, they should not be stricken." Counsel's statement concerns a rule of trial procedure, but the one which must be applied here is one of appellate review, viz., that if the stricken portions of a pleading are surplusage, repetitious, or redundant, even though germane, their striking will not be held reversible error on appeal. See Shawnee Life Ins. Co. v. Taylor, 58 Okl. 313, 160 P. 622, 624; Long v. McFarlin, 58 Okl. 321, 159 P. 653; Atchison, T. & S. F. Ry. Co. v. Marks, 11 Okl. 82, 65 P. 996. We have examined the allegations that are the subject of the argument here dealt with, and find therein no allegation of fact or conclusion of law (in any way material to plaintiff's first alleged cause of action) that is not substantially, or in substance, repeated in that part of plaintiff's Third Amended Petition entitled "First Cause Of Action", left intact after the ruling complained of, except those appearing in paragraph XIII thereof, which reads as follows:

"Plaintiff further states that the said gas division order is inequitable, confiscatory, monopolistic and contrary to good conscience, in that it *provides for* a determination of the value of the casinghead gas produced from the leasehold estate by the les*se* and its assignee in accordance with the provisions of the Standard Casinghead Gas Contract adopted by the Natural Gasoline Association of America, which said Standard Casinghead Gas Contract is not a part of and is not contained in the lease contract between the parties, and for the further reason that such determination of value is false, fictitious and unreal, in that it *provides for* payment of royalty on gasoline and other liquid hydrocarbons extracted from the casinghead gas upon an estimated base, derived from field tests, instead of upon the basis of the actual plant recovery. That the actual plant recovery of gasoline, butane, propane, and other liquid hydrocarbons from the casinghead gas produced from the leasehold estate has almost invariably been greater than the estimated recovery as shown by such field tests, and as a result thereof, *the lessee has unjustly enriched itself from the extraction of such liquid hydrocarbons at the expense of the State without payment therefor, as provided by law.*

"Plaintiff further states that said gas division order purports to authorize the deduction of fifty per centum of the residue gas remaining after the extraction from the raw casinghead gas of the gasoline, butane, propane, and other liquid hydrocarbons, before computation of the market value of the royalty interest in such residue gas, and that such arbitrary deduction of

-fi_ty per centum of such residue gas before payment of the market value of the royalty interest in such gas is unlawful and inequitable, and contrary to the provisions of the lease contract, and is wrongful conversion of property belonging to the State." (Emphasis supplied.)

The substance and gist of plaintiff's ·complaint under the above quoted paragraph, viz., that defendant has not paid it ⅛th of the value, or sale price, of the con.stituents or products of the casinghead gas, stated no cause of action against defendant, in view of the fact that defendant's obligation, as to payment for casinghead gas produced under the lease, could legally extend no further than paying ⅛th of the value of said gas in its natural form. Plaintiff shows nowhere in its Third Amended Petition that whatever royalty payments defendant has made for the casinghead gas it has produced under the lease, aggregate a lesser sum than such value.

In other respects, the allegations ·of plaintiff's "First Cause of Action"— those stricken—as well as those remaining intact after the court's ruling—constitute no more than a predicate, and/or plea, for a declaratory judgment as to the validity of the division order. They show no injury to plaintiff by said instrument's execution and delivery. The nearest plaintiff's pleading comes to alleging that defendant has done any act to its injury (under purported authority of the division order) is the allegation in paragraph XII (one of the stricken parts of its First Cause Of Action) that withholding by defendant of a portion of the lessor's ⅛th of the gas produced under the lease is, under the provisions of the lease and applicable law, an unlawful "conversion of money belonging to the State." Plaintiff's Third Amended Petition nowhere alleges affirmatively and specifically that defendant *has withheld* any portion of its ·share of the casinghead gas, as such, nor does it demonstrate how, or in what way, .any provision of the division order, purporting to authorize such withholding of .gas, has yet harmed it. It does not even

allege that the division order is a cloud of any kind upon their title. In this connection, see 44 Am.Jur., "Quieting Title", sec. 38. A cause of action such as plaintiff attempted to state (in that part of its Amended Petition entitled "First Cause Of Action") for cancellation of the division order is one of equitable cognizance. It is essential in stating such a cause of action, to show that substantial injury has been done, or will occur, if the court does not exercise its equitable powers. See Haener v. Albro, 73 Idaho 250, 249 P.2d 919, 924; Denovan v. Golden State Woolen Mills, 104 Cal.App. 504, 286 P. 714, 716; Aetna Life Ins. Co. v. Richmond, 107 Conn. 117, 139 A. 702; Busch v. Broun, Tex.Civ.App., 152 S.W. 683, 689; 30 C.J.S., Equity § 229; 19 Am. Jur., Equity, sec. 29. In Cary v. Corporation Comm. of Okl., D.C.W.D.Okl., 9 F. Supp. 709, 713, the court said:

" * * * courts do not decide abstract questions. Before a plaintiff may ·invoke the jurisdiction of a court of equity, it must disclose that the order complained of affects the plaintiff injuriously."

Without such showing, all the court actually is asked to determine in the present case (other than the point already dealt with) is the abstract question of whether or not the provisions of the division order complained of are contrary to the provisions of the lease, and/or to the laws in such cases made and provided. Courts of this jurisdiction do not determine abstract questions, ·or render declaratory judgments. See Speaker v. Board of County Com'rs, Okl., 312 P.2d 438, 442; Davis v. Little, Okl., 289 P.2d 666; City of Muskogee ex rel. Savidge v. Mann, 199 Okl. 252, 185 P.2d 441, 443. As said in a quotation from R.C.L., in Ferk v. Hall, 119 Okl. 251, 249 P. 1106, 1109:

"The duty of a court is to determine actual controversies when properly brought before it, and not to give opinions on * * * abstract propositions."

In International Shoe Co. v. Smith-Cole, 10 Cir., 62 F.2d 972, 974, it was held:

"Courts are organized to adjudicate controversies of substance, and not to declare abstract rules of law."

In view of the foregoing, we have concluded that neither the trial court's alleged error in sustaining, in part, defendant's motion to strike, nor its judgment sustaining defendant's demurrer to plaintiff's Third Amended Petition constitute sufficient ground for reversing said judgment; and we so hold. Said judgment is therefore affirmed.

CORN, V. C. J., and DAVISON, HALLEY, JOHNSON, WILLIAMS, JACKSON and CARLILE, JJ., concur.